UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:                                                  :
                                                        :
AMPAL-AMERICAN ISRAEL CORP.,            :    Chapter 7
                                                        :    Case No. 12-13689 (SMB)
                        Debtor.                 :
---------------------------------------------------------X
ALEX SPIZZ, as Chapter 7 Trustee for     :
Ampal-American Israel Corp.,                 :
                                                        :
                        Plaintiff,              :
                                                        :
    —against—                                   :    Adv. Proc. No. 14-02110 (SMB)
                                                        :
IRIT ELUZ,                                          :
                                                        :
                        Defendant.            :
---------------------------------------------------------X

## MEMORANDUM DECISION AND ORDER DENYING RECONSIDERATION AND GRANTING LEAVE TO FILE AN AMENDED EXPERT REPORT

**A P P E A R A N C E S:**

AKERMAN LLP
520 Madison Avenue, 20th Floor
New York, New York 10022

    John P. Campo, Esq.
    Darryl R. Graham, Esq.
        Of Counsel

*Attorneys for Plaintiff*

COLE SCHOTZ P.C.
1325 Avenue of the Americas, 19th Floor
New York, New York 10019

    Steven L. Klepper, Esq.
    David S. Gold, Esq.
        Of Counsel

*Attorneys for Defendant*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

In *Spizz v. Eluz* (*In re Ampal-Am. Isr. Corp.*), Adv. Proc. No. 14-02110 (SMB), 2020 WL 2529337 (Bankr. S.D.N.Y. May 14, 2020) ("*Ampal II*"), the Court granted the defendant Irit Eluz's motion *in limine* to exclude the report (the "Report") and testimony of the plaintiff chapter 7 trustee's ("Trustee") corporate governance expert, Steven D. Solomon. The Trustee now moves for reconsideration. Alternatively, he seeks leave to file an amended report. For the reasons that follow, the Court denies the motion for reconsideration but grants the Trustee leave to file an amended report.

### BACKGROUND

The background is set out in *Spizz v. Eluz* (*In re Ampal-Am. Isr. Corp.*), 543 B.R. 464 (Bankr. S.D.N.Y. 2016) ("*Ampal I*"), *Ampal II* and *Spizz v. Eluz* (*In re Ampal-Am. Isr. Corp.*), Adv. Proc. No. 14-02110, 2020 WL 5075992 (Bankr. S.D.N.Y. Aug. 25, 2020) ("*Ampal III*"). I assume familiarity with those decisions and limit the discussion to the facts relevant to the pending motion.

At all relevant times, Ampal-American Israel Corporation ("Ampal") was a New York holding company whose operating subsidiaries did business primarily in the state of Israel and the Middle East. At all relevant times, Yosef Maiman was directly or indirectly the majority shareholder, a director and chairman of the Ampal Board. At the same time, he was also conducting business through an Israeli corporation, Merhav (M.N.F.) Ltd. ("MNF"). Eluz was hired by Maiman and served as Ampal's Chief Financial Officer, Senior Vice President, and Treasurer, and she concedes that Maiman determined her annual compensation. She also became a director of Ampal in May 2010, but the Trustee is suing her only in her capacity as an officer.

2

In or around 2004, the Ampal Board of Directors established a special committee of independent directors ("Special Committee") to review and approve transactions with any related party, which included Maiman and MNF. In February 2009, the Special Committee approved a management services agreement ("2009 Agreement") with MNF to compensate it for managing several of Ampal's projects. Ampal agreed to pay MNF 10 million New Israeli Shekels ("NIS") per year in quarterly installments. MNF agreed to render quarterly reports, or otherwise reasonably requested by Ampal, that detailed the scope and nature of its services for the quarter. Although not mentioned in the 2009 Agreement, Eluz informed the Special Committee at the time it was considering the approval of the 2009 Agreement that Ampal's management would monitor MNF's remuneration based on MNF's detailed reports of its services, and if need be, its remuneration might be altered.

Almost two years later, at a December 19, 2010 Special Committee meeting, Eluz stated that the compensation paid to MNF under the 2009 Agreement was "inadequate." The Special Committee approved a new agreement (the "Superseding Agreement") in principle that would replace the 2009 Agreement and pay MNF 50% of its Ampal-related expenses. Per the Special Committee's direction, Eluz submitted the report of MNF's services in 2010. Her report also included a summary of MNF's expenses totaling 48,314,000 NIS and Ampal's 50% share totaling 24,157,000 NIS. After receiving Eluz's report, the Special Committee approved the Superseding Agreement on December 30, 2010 and the payment of 24,157,000 NIS to MNF for 2010. Going forward, the Special Committee would decide the appropriate fee at or near the end of the fiscal year based on a presentation by MNF of expenses incurred in providing

3

services to Ampal during the current year. In 2011, Ampal paid MNF the same amount that it had paid in 2010 (the "2011 Fee"). According to the Trustee, the Special Committee never approved the 2011 Fee.

**The Report**

The Trustee brought this adversary proceeding against the members of the Special Committee and Eluz, but the Court dismissed the claims against the members of the Special Committee in *Ampal I*. Following that dismissal, two claims remained against Eluz, the sole defendant. Count I charged her with breaching her fiduciary duties in connection with the Special Committee's approval of the Superseding Agreement and her alleged failure to monitor and report to the Special Committee regarding MNF's services and expenses during 2010. Count II charged her with breaching her fiduciary duties by paying the 2011 Fee without the approval of the 2011 Fee by the Special Committee.

The Trustee retained Solomon ostensibly to opine on corporate governance procedures, but he did not stop there; Solomon adjudicated the factual disputes and legal issues in the case. He rendered three primary opinions, but "[a]s a predicate matter," he opined that "Eluz was both fundamentally conflicted in these transactions as well as a sophisticated actor with knowledge of customs and practices by parties in conflict of interest transactions." (Report ¶ 36.) He then proffered three primary opinions:

> *Opinion 1*: The [Special Committee] *relied primarily* on Eluz in agreeing to the [2009 Agreement] and Superseding Management Agreement and payment of remuneration to [MNF];

4

> *Opinion 2*: Eluz *failed* to, in accord with custom and practice, appropriately monitor and report in writing to the [Special Committee] of [MNF's] activity; and
>
> *Opinion 3*: Eluz *failed*, in accord with custom and practice, to obtain [Special Committee] authorization and substantiation of [MNF's] fees.

(Report ¶ 4 (emphasis added).)  Each opinion included an analysis of the evidence he reviewed and, in many instances, discussed the law supporting his conclusions.

The Court granted Eluz's motion *in limine* to preclude the Report and Solomon's testimony in its entirety.  The Report usurped the role of the jury – the jury did not need expert testimony, particularly from someone lacking personal knowledge, to decide any factual issues regarding Eluz's conflict, her sophistication or knowledge, what the Special Committee relied on in approving the Superseding Agreement, whether she failed to monitor and report on MNF's activities and whether she failed to obtain the Special Committee's authorization to pay MNF.  Furthermore, the Report devoted its principal discussion regarding corporate governance to what the Special Committee should have done, and there was a danger that the jury might attribute the Special Committee's alleged failings to Eluz, who was an officer.  The Court summarized its concerns with the Report as follows:

> The Report . . . is patently improper expert testimony.  It includes a factual narrative, despite Solomon's lack of personal knowledge, which is, at best, based on a selective reading of the entire record, it makes "factual findings" based on this selective reading which usurps the role of the jury (as noted, this is a jury case), it declares the law that this Court should apply essentially charging the jury, and renders a decision on the appropriate outcome based on the facts and the law.  The Report also describes matters for which any probative value is substantially outweighed by the risk of confusing the issues and misleading the jury.

*Ampal II*, 2020 WL 2529337, at *4 (footnote omitted).  The Trustee now seeks reconsideration or leave to file an amended report.

5

**DISCUSSION**

A motion for reargument or reconsideration is governed by Local Bankruptcy Rule 9023-1,[1] which provides that the "motion must set forth concisely the matters or controlling decisions which counsel believes the Court has not considered." The movant must show that the court overlooked controlling decisions or factual matters that might have materially influenced its earlier decision. *In re Asia Global Crossing, Ltd.*, 332 B.R. 520, 524 (Bankr. S.D.N.Y. 2005). Alternatively, the movant must demonstrate the need to correct a clear error or prevent manifest injustice. *Perez v. Progenics Pharm., Inc.*, 46 F. Supp. 3d 310, 314 (S.D.N.Y. 2014); *accord In re Asia Global Crossing, Ltd.*, 332 B.R. at 524. A manifest injustice exists when a "verdict is wholly without legal support," *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014), and the error is obvious to all who view it. *Green Goblin, Inc. v. Simons* (*In re Green Goblin, Inc.*), Adversary No. 09-067, 2012 WL 1971143, at *1 n. 2 (Bankr. E.D. Pa. May 31, 2012), *aff'd*, Civil Action No. 12-4076, 2014 WL 5800601 (E.D. Pa. Nov. 6, 2014). "These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court," *Griffin*

---

[1] Local Bankruptcy Rule 9023-1(a) states:

> A motion for reargument of a court order determining a motion must be served within fourteen (14) days after the entry of the Court's order determining the original motion, or in the case of a court order resulting in a judgment, within fourteen (14) days after the entry of the judgment, and, unless the Court orders otherwise, shall be made returnable within the same amount of time as required for the original motion. The motion must set forth concisely the matters or controlling decisions which counsel believes the Court has not considered. No oral argument shall be heard unless the Court grants the motion and specifically orders that the matter be re-argued orally.

The Trustee's motion also invokes Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure, but the standards are the same as the local reargument rule. *Cf. Lowinger v. Morgan Stanley & Co. LLC* (*In re Facebook, Inc. IPO Sec. & Derivative Litig.*), 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014) (Sweet, J.) (discussing the analogous Local District Court Rule 6.3), *aff'd*, 841 F.3d 122 (2d Cir. 2016).

*Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999); *accord Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012), and a motion for reargument is not an opportunity to present the case under new theories, secure a rehearing on the merits, or otherwise take a "second bite at the apple." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998); *see also Liberty Media Corp.*, 861 F. Supp. 2d at 265 ("A motion for reconsideration is not an opportunity for making new arguments that could have been previously advanced, nor is it a substitute for appeal.") (citations and internal quotation marks omitted).

The Trustee argues that Eluz's noncompliance with corporate governance norms is the central issue in the case and that "exclusion of expert testimony on a 'central issue of the case' is 'manifest error' requiring reversal." (*Plaintiff's Motion for Reconsideration and Memorandum of Law Regarding Order Granting Motion in Limine to Exclude the Expert Report and Testimony of Steven D. Solomon*, dated May 28, 2020 ("*Trustee's Brief*"), at 2 (quoting *Weiss v. Chrysler Motors Corp.*, 515 F.2d 449, 459-60 (2d Cir. 1975)) (ECF Doc. # 111).) The Trustee "fully admits" that Solomon lacks firsthand knowledge of the facts and contends that Solomon's "sole purpose is to provide the jury with an understanding of the relevant customs and norms applicable to an officer confronted with a situation involving a conflict of interest, which is an objective opinion from a qualified individual to a jury who needs to decide whether Defendant Eluz acted appropriately or not under the circumstances." (*Id.* at 3-4.)

The only "objective opinion" in the Report relates to practices a Board (in this case, a Special Committee) should follow when faced with a conflicted transaction. (*See* Report ¶ 33, discussed below.) The Report does not opine on what the CFO of a public

7

corporation is supposed to do when the Special Committee is considering a transaction with another corporation owned by Ampal's chairman, Maiman. Rather, the Report concludes that Eluz breached her fiduciary duties for the reasons stated in the three opinions. The Trustee implies that the Court was hypocritical because while criticizing Solomon for making factual determinations that usurped the role of the jury, it made its own factual findings in rejecting the Report. (*Trustee's Brief* at 3 ("The Court charges Solomon with making factual assumptions of which he lacks actual knowledge and of a selective review of the record. In doing so, the Court is reviewing the record pretrial on its own and making its own factual determinations, even going as far as using the same factual predicate in Solomon's report to find exculpatory 'evidence' in favor of Defendant Eluz.").)

In the part of *Ampal II* to which the Trustee refers, the Court was commenting on Solomon's conclusion that Eluz was conflicted and her recommendation to increase MNF's management fee was evidence of a "*quid pro quo.*" *Ampal II*, 2020 WL 2529337, at *4. The Court observed that there was evidence that Solomon had not considered supporting the opposite conclusion. The Court was not making a factual finding, but rather, emphasizing that Solomon's conclusions were based on a selective reading of evidence instead of the entire body of evidence that the jury would consider on an issue it would decide. *Ampal II*, 2020 WL 2529337, at *4 ("Based on those findings, Solomon opines that Eluz's facilitation of favorable management fees to MNF was 'indicial evidence of ... a *quid pro quo.*' (¶ 41.) But this is precisely what the jury must decide after hearing *all* of the evidence and that determination is not beyond the jury's ken.") (emphasis in original).

8

As a fallback, the Trustee next argues that the Court should not have excluded Solomon's testimony *in toto*, and instead, should have simply limited it to more general testimony regarding corporate governance norms in conflicted transactions. (*Trustee's Brief* at 6 ("The potential prejudice to Defendant Eluz regarding the factual predicate in Solomon's report, if ultimately not proven through admissible evidence at trial, could be cured by limiting Solomon's testimony strictly to his expert opinion regarding corporate governance norms in the conflict of interest transaction context. This less harsh remedy addresses the Court's concerns, while allowing the Plaintiff to introduce expert testimony on what is a critical issue in the case.").) The Trustee implies that the Court is guilty of a manifest injustice because it did not undertake the burden of culling out, as the Trustee is now attempting to do, allegedly unobjectionable parts of the Report. (*Plaintiff's Reply in Support of Motion for Reconsideration and Memorandum of Law Regarding Order Granting Motion In Limine to Exclude the Expert Report and Testimony of Steven D. Solomon*, dated July 2, 2020 ("*Reply*"), at 3 ("Further, by limiting Solomon's testimony to only these general concepts of corporate governance norms and customs, Solomon's opinion testimony will embody the type and quality of relevant expert testimony that is both appropriate and critical to this dispute.") (ECF Doc. # 117).)

The Trustee, in this regard, singles out paragraphs 30-35 of the Report as critical and non-prejudicial. (*Reply* at 4.) Paragraph 30 introduces paragraphs 31-35, stating that they detail best practices in conflict of interest transactions. Paragraph 31 quotes excerpts from section 713 of the New York Business Corporation Law, which deals with transactions between a corporation and one of its directors directly or indirectly through

9

another corporation. Paragraph 32 paraphrases the requirements of § 713. These paragraphs are innocuous but not particularly helpful and Solomon will not be permitted to testify about the requirements of section 713. The Court will charge the jury on the relevant law.

Paragraph 33 sets out the practices the corporation should follow to satisfy these requirements. The first is to appoint an independent committee to oversee the transaction. The independent committee should then retain independent advisors, obtain disclosure of material facts, receive necessary financial information and advice, and if the matter relates to financial compensation, the information should show "(i) the rationale for the compensation, (ii) comparable compensation cases, (iii) costs and expenses, and (iv) the aggregate potential compensation payable." (Footnote omitted.) Finally, the actions of the directors and officers should be fully documented in writing both in agreements and board meeting minutes. Paragraph 34 explains that these procedures "ensure comportment with fiduciary duties," and that "robust procedural protections mimicking an arm's length approval process are created." (Footnote omitted.)

Thus far, the Report deals with what the Board and the Special Committee are supposed to do. Paragraph 35, however, sweeps in officers suggesting that they should follow the same practices as the Special Committee, apparently without regard to their responsibilities:

> Similarly, while these procedures customarily apply for directors *and officer* compliance with the duty of loyalty, the duty of care has similar practices. These require that the subject matter be duly deliberated upon and documented. To the extent *officers* and directors rely on advisors in terms of decision-making, the advisor should be properly vetted for a lack

10

> of conflict. Additionally *officers* or directors should undertake an information process through advisors or otherwise that produces all of the available material information. This is particularly true when a compensation-related decision is being made. The Committee, together with its advisers and *officers*, should implement procedures to have all the material information reasonably available to it and in a format which presents the compensation transparently and clearly.

(Footnotes omitted; emphasis added). The Report concludes that Eluz breached a fiduciary duty by failing to advise the Special Committee to retain independent advisors, and the Special Committee *and Eluz* failed to "follow this practice and procedure which would have more ably supported an arms-length, market-based renumeration of [MNF]." (Report ¶ 44.)

The Court addressed these paragraphs at length in *Ampal II.* After summarizing their contents and Solomon's conclusion, the Court ruled that the relevance of what the Special Committee should have done was questionable but more important, was prejudicial to Eluz:

> What the Special Committee should have done is irrelevant but even if it is relevant, it is highly prejudicial to Eluz. Eluz was not member of the Board or the Special Committee. To permit Solomon to suggest that Eluz breached her fiduciary duty because the Board or the Special Committee did not follow these best practices creates the risk that a jury will attribute the Board's or the Special Committee's purported failure to Eluz – the sole remaining defendant in this action.

*Ampal II*, 2020 WL 2529337, at *6.

Seeking to deflect the Court's concern that paragraphs 30-35 might lead a jury to conclude that Eluz breached her fiduciary duties because the Special Committee did not follow these best practices, the Trustee emphasizes on six occasions in his *Reply* that Eluz was also a director of Ampal. (*Reply* at 1 ("This is a fiduciary duty, conflict of interest, corporate governance dispute, and Eluz, at all relevant times, was an officer

11

*and director* of the Debtor." ) (emphasis in original); 4 ("Solomon's specific opinions – Report, ¶¶ 30-35 – are clear as to the customs and norms that exist with respect to conflict of interests transactions, as well as the obligations of officers and directors (of which Eluz was both), and those of the special committee."); 5 ("Because Eluz was an officer and director at all times relevant to the claims in 2010 and 2011 . . ., the relevant obligations of officers and directors is [sic] relevant to this dispute."); 5 ("[P]aragraphs 30-35 . . . do not conflate any obligations nor suggest that Eluz 'breached her fiduciary duty because the Board [that she was on] or the Special Committee did not follow these best practices' such that a jury could confuse the obligations of the committee with obligations of Defendant as an officer."); 5 ("[P]utting aside the issue of Eluz's directorship, Plaintiff submits that by limiting Solomon's opinions to the nature of those set forth in Paragraphs 30-35, the potential conflict created by, as the Court identified, paragraph 44 is resolved."); 5-6 (Paragraphs 30-35 do "not describe the duties of a committee, such that they could then be confused with the duties of an officer or director, but rather this section describes the procedures a corporation – exercised through its officers and directors (Eluz being both) is required to implement . . . .").)

Eluz was not a member of the Special Committee, and the Trustee sued her solely in her capacity as an officer. Continual references in the *Reply* to the fact that Eluz was also an Ampal director, a role that has nothing to do with this case, suggest that the Trustee is attempting to conflate Eluz's distinct and separate duties and responsibilities as an officer and as a director, and illustrate how Solomon's testimony might confuse rather than educate the jury. Accordingly, the motion for reconsideration is denied, and

12

the Trustee's suggestion that Solomon be permitted to testify consistent with paragraphs 30-35 of his Report is rejected.

**Request for Additional Time**

The Trustee requests that if the Court denies his motion for reconsideration, he be granted additional time to prepare a revised report consistent with the Court's ruling or be granted leave to file an interlocutory appeal.  (*Trustee Brief* at 7.)  Eluz objects arguing that any attempt to make the report non-objectionable through a redraft would be futile.  (*Memorandum of Law in Opposition to Plaintiff's Motion for Reconsideration and Memorandum of Law Regarding Order Granting Motion in Limine to Exclude the Expert Report and Testimony of Steven D. Solomon*, dated June 18, 2020, at 10-11 (ECF Doc. # 114).)

I disagree that it would necessarily be futile.  Solomon could presumably draft a report that delineates and distinguishes between the duties of the Special Committee and Eluz to avoid the possibility that Eluz will bear responsibility in the jury's eyes for the Special Committee's failure to follow best practices.  That said, I question the continuing need for the type of amended report that the Trustee is contemplating.  After the Trustee moved for reconsideration, the Court dismissed Count I in *Ampal III*.  Thus, the claims against Eluz concerning the entry into the Superseding Agreement, the focus of paragraphs 30-35, have been dismissed.  The remaining claim against Eluz centers on the fact that Ampal continued to pay MNF the same amount during 2011 even though the Special Committee allegedly never approved that amount.

13

This appears to the Court to be a straightforward claim that does not require expert testimony. However, particularly in light of the changed legal landscape and there being no suggestion of prejudice, the Trustee is granted leave to submit an amended report if he so chooses within sixty days from the date of this order that is consistent with *Ampal II* and this order and limited to the remaining issues in the case.

So ordered.

Dated: New York, New York
September 1, 2020

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge