UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                                          :
                                                                                      :
AMPAL-AMERICAN ISRAEL CORP.,                            :         Chapter 7
                                                                                      :         Case No. 12-13689 (SMB)
                                  Debtor.                               :
------------------------------------------------------------X
ALEX SPIZZ, as Chapter 7 Trustee for                       :
Ampal-American Israel Corp.,                                    :
                                                                                      :
                                  Plaintiff,                              :
                                                                                      :
     —against—                                                           :         Adv. Proc. No. 14-02110 (SMB)
                                                                                      :
IRIT ELUZ,                                                                   :
                                                                                      :
                                  Defendant.                           :
------------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER
DENYING MOTION FOR RECONSIDERATION**

**A P P E A R A N C E S :**

AKERMAN LLP
520 Madison Avenue, 20th Floor
New York, New York 10022

  John P. Campo, Esq.
  Darryl R. Graham, Esq.
    Of Counsel

*Attorneys for Plaintiff*

COLE SCHOTZ P.C.
1325 Avenue of the Americas, 19th Floor
New York, New York 10019

  Steven L. Klepper, Esq.
  David S. Gold, Esq.
    Of Counsel

*Attorneys for Defendant*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

Count II of the chapter 7 trustee's ("Trustee") complaint alleged that Irit Eluz, the Debtor's CFO, breached her fiduciary duties of loyalty and due care by causing the Debtor to pay certain management fees to Merhav (M.N.F.) Ltd. ("Merhav") during 2011 without the authorization of the Debtor's Special Committee of the Board of Directors ("Special Committee").  She moved for summary judgment dismissing Count II, but the Court denied the motion from the bench ruling that the contract governing Merhav's compensation was ambiguous.  Eluz now moves for reconsideration,[1] contending that the Court overlooked controlling authority relating to the Trustee's *prima facie* case, and specifically, the requirement to demonstrate a loss.  The Trustee opposes the motion.[2]  The *Motion* is denied for the reasons that follow.

## BACKGROUND

The background to this dispute is discussed in the Court's prior decisions, including *Spizz v. Eluz* (*In re Ampal-Am. Israel Corp.*), 543 B.R. 464 (Bankr. S.D.N.Y. 2016) and *Spizz v. Eluz* (*In re Ampal-Am. Israel Corp.*), Adv. Proc. No. 14-02110 (SMB), 2020 WL 5075992 (Bankr. S.D.N.Y. Aug. 25, 2020).  I assume familiarity with these

---

[1] *See Memorandum of Law in Support of Defendant Irit Eluz's Motion for Reconsideration of the Court's February 9, 2021 Order Denying Ms. Eluz's Motion for Partial Summary Judgment*, dated Feb. 10, 2021 ("*Motion*") (ECF Doc. # 140-1); *see also Reply Memorandum of Law in Further Support of Defendant Irit Eluz's Motion for Reconsideration of the Court's February 9, 2021 Order Denying Ms. Eluz's Motion for Partial Summary Judgment*, dated Feb. 19, 2021 (ECF Doc. # 146).

[2] *See Plaintiff's Memorandum of Law in Opposition to Irit Eluz's Untimely Motion for Reconsideration Regarding the Court's Denial of Her Motion for Summary Judgment on Count II*, dated Feb. 17, 2021 (ECF Doc. # 144).

2

prior decisions and limit the background discussion to those facts necessary to the disposition of the pending *Motion*.

In 2010, the Debtor and Merhav entered into the Cooperation and Management Agreement ("Superseding Agreement")[3] pursuant to which Merhav agreed to provide certain management services to the Debtor and the Debtor agreed to compensate Merhav in an amount to be determined by the Debtor's Special Committee at or around the end of the Debtor's fiscal year on December 31. The Superseding Agreement provided in pertinent part:

> In consideration for Merhav's services and undertakings, Ampal will pay Merhav a Management Fee, which will be determined annually and shall be equal to a percentage of the direct and indirect expenses incurred by Merhav in connection with providing services to or for the benefit of Ampal, to the extent not reimbursed or recouped from other parties . . . . The Management Fee shall be determined by the Special Committee . . . at or around the end of each fiscal year . . . based on a presentation by Merhav of expenses incurred in providing services hereunder during the current year. The parties will review the amount of the Management Fee annually in good faith and shall make such adjustments as they agree may be reasonably appropriate in light of the work performed or to be performed by Merhav.

(Superseding Agreement at Bates No. SPIZZ00059275.)

The Superseding Agreement did not fix a particular fee and the only criterion it established was that the fee would be based on a percentage of Merhav's Ampal-related expenses, leaving to Merhav in the first instance the obligation to make a presentation of its expenses to the Special Committee. For 2010, the Special Committee fixed the management fee at 50% of Merhav's Ampal-related expenses, totaling 24 million New

---

[3]   A copy of the Superseding Agreement is attached as Exhibit B to the *Declaration of Steven L. Klepper*, dated Aug. 28, 2020 (ECF Doc. # 122-1).

3

Israeli Shekels (NIS). The Special Committee would have to make a new determination regarding the 2011 management fee at or near the end of the 2011 fiscal year.

The Superseding Agreement was silent regarding Merhav's right to advance payments subject to a "true up" and award at the end of 2011. Advance quarterly payments were apparently the practice followed in earlier years. In 2011, Eluz caused the Debtor to continue to pay Merhav quarterly at the 2010 rate, but the Special Committee never got around to approving a management fee for 2011. The Trustee asserted in Count II of his complaint that Eluz breached her fiduciary duty to Ampal by causing the Debtor to pay these management fees without receiving authorization from the Special Committee. Eluz argued, *inter alia*, that she was authorized to make the quarterly advance payments that would be subject to the "true up" and a fee approved by the Special Committee at the end of 2011.

On August 28, 2020, Eluz moved for summary judgment on Count II. She argued that the Trustee had failed to identify any non-speculative damages – a necessary element of a breach of fiduciary duty claim for which the Trustee bears the burden of proof. The Court denied Eluz's motion at the November 19, 2020 hearing, concluding that the allegedly unauthorized payments constituted the Debtor's damages:

> With respect to . . . Ms. Eluz's motion . . . the trustee's theory of the case is she wasn't allowed to make quarterly payments, and she wasn't allowed to make any payments unless payments were approved by special committee, which never happened. Under those circumstances, it seems to me that the estate has made a prima facie showing of damage. This is distinguished or distinct from the cases Mr. Klepper has cited because no amount was due under the trustee's interpretation until the amount was fixed by the board.

(Nov. 19, 2020 Hr'g Tr. at 47:4-13 (ECF Doc. # 135).) In the *Motion*, Eluz contends that the Court overlooked controlling precedent requiring the Trustee to make a *prima facie* showing of loss to the Debtor as a result of Eluz's alleged conduct.

## DISCUSSION

A motion for reargument or reconsideration is governed by Local Bankruptcy Rule 9023-1. "The movant must show that the court overlooked controlling decisions or factual matters that might have materially influenced its earlier decision." *In re Asia Glob. Crossing, Ltd.*, 332 B.R. 520, 524 (Bankr. S.D.N.Y. 2005) (citation and internal quotation marks omitted). Alternatively, the movant must demonstrate "the need to correct a clear error or prevent manifest injustice." *Perez v. Progenics Pharm., Inc.*, 46 F. Supp. 3d 310, 314 (S.D.N.Y. 2014) (citation and internal quotation marks omitted). "These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court," *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999), and a motion for reconsideration is not an opportunity to present the case under new theories, secure a rehearing on the merits, or otherwise take a "second bite at the apple." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

It has never been disputed that the Trustee must make a *prima facie* showing of damages to establish his breach of fiduciary duty claim. *Sea Trade Mar. Corp. v. Coutsodontis*, 744 F. App'x 721, 725-26 (2d Cir. 2018) (summary order) (the plaintiff must prove "non-speculative damages"). The Court ruled that the Trustee had satisfied this burden. Under the Trustee's reasonable interpretation of the Superseding Agreement, any payments to Merhav were unauthorized absent Special Committee

5

approval and the Special Committee never approved a fee for 2011.  The unauthorized payments proximately caused the Debtor to suffer an injury in the sum of NIS 24 million, and Eluz's participation in the payment of unauthorized fees to Merhav in 2011 established a *prima facie* claim of breach of fiduciary duty.  *See Breslin v. Superior Steakhouse Sys. Holding Corp.*, 2 N.Y.S.3d 191, 194 (N.Y. App. Div.) (50% shareholder and partner in business venture breached his fiduciary duty when he paid unauthorized management fees to a separate entity controlled by him and to his son for services rendered), *leave to appeal denied*, 43 N.E.3d 375 (N.Y. 2015); *SantiEsteban v. Crowder*, 939 N.Y.S.2d 28, 29-30 (N.Y. App. Div. 2012) ("Since defendants' payments to themselves were unauthorized, as a matter of law, they are liable for breach of fiduciary duty."); *see also Hirsch v. Pennsylvania Textile Corp.* (*In re Centennial Textiles, Inc.*), 227 B.R. 606, 612 (Bankr. S.D.N.Y. 1998) (unauthorized payments in violation of Bankruptcy Code § 549 stated claim for breach of fiduciary duty for the loss suffered in the amount of the unauthorized payments).

Once the Trustee demonstrated the unauthorized payments to Merhav, the burden shifted to Eluz to show that the loss was less because Merhav was entitled to some compensation from the Debtor for the services rendered in 2011.  In the leading case, *N.Y. Teamsters Council Health & Hosp. Fund v. Estate of DePerno*, 18 F.3d 179 (2d Cir. 1994), an ERISA trustee hired two cooks who worked at an inn owned by his son as maintenance men at the Fund during the winter months when they were not needed at the inn.  *Id.* at 181.  Their hiring doubled the number of maintenance men employed by the Fund and the corresponding expenses borne by the Fund.  *Id.*  The Plaintiffs contended that the trustee hired the cooks to ensure their continued

employment at the son's inn. *Id.* The District Court concluded that the trustee and his son, who was also an attorney for the Fund, had violated ERISA but awarded only one dollar in nominal damages because the plaintiffs "did not prove that the Fund had not received fair value for the payments, *i.e.,* the benefit of the work performed by the cooks." *Id*.

The Second Circuit reversed on this point, noting that once the plaintiffs proved the payments to the two cooks/maintenance men, the burden shifted to the fiduciaries to show any offsets:

> We conclude that after the plaintiffs sustained their burden of showing the defendants' violation of their fiduciary duty to the Fund *and the payment of money as a result of that violation*, the burden should have shifted to the defendants to demonstrate factors mitigating the costs incurred by the plaintiffs.

*Id.* at 180-81 (emphasis added). Citing the law of trusts that "once the beneficiaries have established their *prima facie* case by demonstrating the trustees' breach of fiduciary duty, 'the burden of explanation or justification … shift[s] to the fiduciaries,'" *Nedd v. United Mine Workers of Am.,* 556 F.2d 190, 210 (3d Cir. 1977), the Second Circuit expanded on its holding:

> The plaintiffs have shown that the defendants breached a fiduciary duty to the Fund by expending $45,484.15 over five winters on two maintenance employees who were "parties in interest." Proof of that expenditure alone, even without the further proof that the employment of these two workers doubled the number of maintenance workers ordinarily employed at the Fund building, was sufficient to shift to the defendants the burden to show that the employment of these two workers, and the corresponding expense, was "fair and reasonable under all of the circumstances." *See Brink,* 667 F.2d at 426. If the defendants cannot persuade the trier that the services rendered by the two additional maintenance workers were reasonably necessary, the fund is entitled to its entire payment. If the workers were reasonably necessary, then the defendants must prove that the value of their reasonably necessary services at least equaled the sums paid; otherwise, the plaintiffs are entitled to recover damages for the

7

difference.

*DePerno*, 18 F.3d at 182-83; *see Stella v. Graham-Paige Motors Corp.*, 232 F.2d 299, 302 (2d Cir.) (Frank, J.) ("[O]nce a cestui shows a breach of such a duty and prima facie proof of a maximum amount of profits made by the fiduciary, then the fiduciary has the burden of proving to what extent the profits were less than this maximum— especially where the fiduciary's breach is responsible for the difficulty or impossibility of proving the amount with certainty— and that consequently, if the fiduciary's proof leaves the amount uncertain, judgment goes against him for the maximum figure."), *cert. denied*, 352 U.S. 831 (1956).

Litigants sometimes misread *DePerno* as shifting the burden to disprove damages once the plaintiff has demonstrated a breach of fiduciary duty even without evidence of a non-speculative loss. *E.g.*, *Fed. Ins. Co. v. Mertz*, 12-cv-1597-NSR-JCM, 2016 WL 164618, at *2-3 (S.D.N.Y. Jan. 12, 2016); *Salovaara v. Eckert*, No. 94 Civ. 3430 (KMW), 1998 WL 276186, at *3-4 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 901 (2d Cir. 1999). These cases, however, are distinguishable because they did not involve the type of unauthorized payments present in *DePerno* and Ampal's case. For example, in *Salovaara*, the plaintiff charged that the defendant had breached his fiduciary duties by competing with the investment fund that they both managed. The plaintiff argued, citing *DePerno*, that the proof of improper competition was sufficient to establish the breach of fiduciary duty claim and shift the burden to disprove damages to the defendant. *See Salovaara*, 1998 WL 276186, at *3. The Court rejected this interpretation and distinguished *DePerno*, observing that the breach of fiduciary duty in *DePerno* involved improper payments resulting in the loss. *Id.* at *4 ("In *DePerno*,

8

plaintiffs clearly established both a breach and loss to the fund (that is, the expenditures to pay the two additional maintenance workers), before the burden shifted to defendants."). Because Salovaara was unable to prove that the competition damaged their fund, the Court granted summary judgment dismissing the breach of fiduciary duty claim seeking damages.

Similarly, in *Mertz*, the plaintiff insurance companies ("Chubb") hired Mertz to provide independent estimates for the repair costs of the insureds' homes. Chubb claimed that Mertz fraudulently inflated the estimates, then solicited the insureds to hire Mertz for the repair work at a lower cost and pocketed the difference. *Mertz*, 2016 WL 164618, at *1. Chubb argued, relying, *inter alia*, on *DePerno* and *Stella v. Graham-Paige Motors Corp.*, that once it proved a fiduciary breach, the burden shifted to Mertz to prove what portion of the claim payment reflected Mertz's actual cost to make the covered repairs. *Id.* at *2. Distinguishing *DePerno* and *Stella*, the District Court stated that because Chubb admitted that "at least some of the insurance payments were spent on repairs, *Stella* would require Chubb to prove the amount of *profits* derived by Mertz Defendants (i.e., the amount of money received that was not spent on repairs) and therefore requires more than just proof of gross payments made." *Id.* at *3 (emphasis in original); *accord id.* at *4 ("Chubb has the burden of showing the claim payments were excessive or inflated, at which point Mertz Defendants will have to show the fairness and reasonableness of such payments, in light of the costs to repair and/or replace the properties.").[4] In other words, Chubb never claimed that the entire amount of the

---

[4] The *Mertz* Court distinguished a third case, *Gomez v. Bicknell*, 756 N.Y.S.2d 209 (N.Y. App. Div. 2002), *leave to appeal dismissed in part and denied in part*, 796 N.E.2d 474 (N.Y. 2003), which involved the theft of a plaintiff-employer's corporate opportunity by the defendant-employee. The *Mertz* Court noted that Mertz was Chubb's consultant and not its employee or agent. Hence, the New York rule, that

9

payments were unauthorized, and in fact, was contractually obligated to pay the reasonable costs. Consequently, it had to prove the amount it overpaid because of Mertz's fraud.

The pending case does not involve claims of breach of fiduciary duty without any non-speculative loss caused by the breach. Under the Trustee's interpretation of the Superseding Agreement, the Special Committee's approval of the management fee was the condition precedent to its payment and the non-occurrence of that condition precedent meant that no payment was contractually due or should have been made. The Trustee does not contend that some amount was owed to Merhav, and Merhav was overpaid. As in *DePerno*, the unauthorized payment, without more, was the breach that caused the loss. This proof shifts to Eluz the burden to demonstrate that the payments were fair and reasonable and the value of Merhav's services to Ampal in 2011.

Before concluding, I turn to a contrary authority that research has revealed. In *SantiEsteban v. Crowder,* 957 N.Y.S.2d 639 (N.Y. Sup. Ct. 2010), shareholders in a cooperative corporation sued the actual or purported officers and directors who managed the co-op and paid themselves $220,000 in compensation for their services. The payments were never properly authorized. The lower court granted the plaintiffs' summary judgment motion on the issue of the defendants' liability for breach of fiduciary duty, but added, without citation to any authority, that "it remains incumbent upon the Plaintiffs to prove the actual damages caused to the corporation, if any,

---

the employer need not prove damages when the employee breaches her fiduciary duty, does not apply. 2016 WL 164618, at *3. In contrast to Mertz, Eluz was an employee of Ampal charged with the faithless performance of her duties *vis a vis* the payment of Merhav's 2011 compensation.

10

sustained by the improper payments at the time of trial." *Id.* at *5. The Appellate Division agreed, again without citation to any authority. 939 N.Y.S.2d at 29-30 (ruling that while the defendants' unauthorized payments to themselves established as a matter of law that they were liable for breach of fiduciary duty, "as the motion court noted, plaintiffs must prove the actual damages, if any, that these payments caused the cooperative since defendants performed valuable services for the cooperative in exchange for the remuneration.").

I respectfully disagree because the decisions, which are not controlling, do not reflect the law. The case involved unauthorized payments — the breach and the loss, as in *DePerno* — and under the authorities discussed above, the burden shifted to the breaching fiduciaries to show that the payments were fair and reasonable and the value of their services.

Accordingly, the Court did not overlook controlling authority[5] and Eluz has failed to point to a clear error or manifest injustice. The *Motion* is, therefore, denied.

So ordered.

Dated: New York, New York
       February 19, 2021

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge

---

[5] Eluz also discussed two additional cases, *Korean Am. Ass'n of Greater New York, Inc. v. Min*, No. 17-cv-6857 (RJS), 2020 WL 57839 (S.D.N.Y. Jan. 3, 2020) and *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018). Eluz did not cite them during the summary judgment briefing and admits they are not controlling precedent. (*Motion* at 8.) If they were never cited and are not controlling precedent, I could not have overlooked controlling authority.

11